UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL LYNN ISBELL | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. _____ |
| VS. | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC, | § | Complaint |
| | § | With Jury Demand Endorsed |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Michael Lynn Isbell ("Plaintiff"), by counsel, and for his Complaint against the defendant, Ocwen Loan Servicing, LLC ("Defendant" or "Ocwen"), states as follows::

### I. INTRODUCTION

1.      Plaintiff asserts claims against Defendant for the willful, knowing, and/or negligent violations of: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 et seq., (known as the Fair Credit Reporting Act, hereinafter referred to as the "FCRA") which relates to the dissemination of consumer credit and other financial information; 2) the Texas Debt Collection Act ("TDCA"),  Tex. Fin. Code § 392.001 *et. seq.*; 3) the common law tort of invasion of privacy; and 4) the Chapter 13 discharge injunction of the United States Bankruptcy Court of the Northern District of Texas, Fort Worth

1

Division, and seeks to recover actual, statutory, and punitive damages, legal fees and expenses against Defendant.

## II. PARTIES

2.  Plaintiff is a natural person residing in Tarrant County, Texas and he is a "consumer" as defined by the FCRA.

3.  Defendant is a foreign limited liability company and may be served by delivering a summons to its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin 78701-3218.

4.  Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined and contemplated respectively, under the FCRA.

5.  Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

6.  Defendant is a furnisher of consumer credit information to Trans Union, LLC, Equifax, Inc., and Experian Information Solutions, Inc., the three (3) national consumer reporting agencies.

## III. JURISDICTION AND VENUE

7.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

8.  Venue in this district is proper because the defendant transacts business in this district, Plaintiff filed his bankruptcy in this district and the conduct complained of occurred in this district.

## IV. FACTUAL ALLEGATIONS

9.      On May 1, 2008, Plaintiff filed a chapter 13 bankruptcy in case number 08-41945-dml13 ("Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division ("Bankruptcy Court").

10.     Prior to Plaintiff filing his Bankruptcy Case, Saxon Mortgage Service ("Saxon") asserted a pre-petition claim against Plaintiff in an attempt to collect a consumer debt allegedly owed by Plaintiff.   The debt required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.   In Plaintiff's bankruptcy petition, the claim was listed in Schedule "D" as a secured claim, such claim was secured by a second lien on Plaintiff's prior home located at 5307 Windy Meadow Drive, Arlington, TX 76017 (the "Property") and identified as Account No. xxx4658 (the "Loan" or "Account").

11.     On May 1, 2008, Plaintiff filed a mailing matrix in his Bankruptcy Case that provided Defendant's correct address.

12.     On May 4, 2008, the Bankruptcy Noticing Center to all creditors, including Saxon, and other parties based on the mailing matrix previously filed with the Bankruptcy Court. This mailing constituted formal notice to Defendant of the above Chapter 13 Bankruptcy. This notice warned all creditors in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362.

13.     On October 20, 2008, Citimortgage, the first lien holder on the Property, filed a Motion for Relief from the Automatic Stay so it could foreclose on the Property.

14.     On November 12, 2008, Plaintiff and Citimortgage entered into an Agreed Order concerning the Motion for Relief on the automatic stay ("Agreed Order"), which was signed by the Court on such date.

15.     On January 2, 2009, Citimortgage filed a Notice of Termination of the automatic stay due to alleged violations of the Agreed Order.

16.     On or before February 11, 2010, Citimortgage foreclosed its first lien on the Property.

17.     On April 13, 2010, Saxon transferred its claim to Defendant.

18.     On September 3, 2013, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein).   The order discharged Plaintiff from any liability for Saxon's pre-petition claim, which by this time had been transferred to Defendant.   Included with the Discharge Order was an explanation of the general injunction prohibiting Defendant and others holding pre-petition claims from attempting to collect their claims against Plaintiff.

19.     The Discharge Order was mailed or e-mailed to all creditors and other parties listed on the mailing matrix filed in the Bankruptcy Case.   On September 4, 2013, a copy of the Discharge Order was served on Defendant by facsimile transmission by the Bankruptcy Noticing Center, which constituted formal notice of Plaintiff's discharge and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a). The Discharge Order and its notice warned all creditors, including Defendant, in

4

conspicuous language that collection of discharged debts was prohibited.   The Discharge Order and notice mailed to Defendant was not returned.   If the United States Postal Service has not returned the mailing of the Discharge Order and notice, or the email was not returned, there is a presumption that Defendant received the Discharge Order and notice sent to it by the Clerk of the Bankruptcy Court.   A copy of the Discharge Order is attached herein as "Exhibit A" and is incorporated herein by reference.

20.     At no time has Defendant or Saxon objected to or disputed the details of the subject claim listed in the schedules filed in Plaintiff's Bankruptcy Case.

21.     At no time did Plaintiff reaffirm the debt at issue.

22.     At no time during the pendency of the Bankruptcy Case was Defendant's pre-petition claim declared to be non-dischargeable.

23.     In October 2013, Defendant reported to Experian that its claim against Plaintiff had been discharged in bankruptcy.

24.     A true and correct copy of Plaintiff's Experian Credit report showing Defendant's admission that the subject debt had been discharged in bankruptcy is attached hereto as Exhibit "B."

25.     Despite receiving communications from the Court and Plaintiff regarding the discharge, Defendant, following the foreclosure and the discharge, engaged in debt collection activity against Plaintiff by: (1) sending correspondence to the Plaintiff regarding the Account as if it was still collectible; (2) illegally accessing Plaintiff's credit reports with one or more of the credit bureaus; and (3) misrepresenting the status of the Account to

Experian credit bureau for the purpose of attempting to collect the discharged debt from Plaintiff.

26.    On or about April 28, 2014, Defendant sent Plaintiff a Privacy Notice regarding the Account, even though the underlying debt had been discharged for over six months and the Property foreclosed for more than three years.

27.    A true and correct copy of the April 28, 2014 Privacy Notice has been attached hereto as Exhibit "C" and is incorporated herein by reference.

28.    On or about May 15, 2014, Defendant sent Plaintiff a Mortgage Assistance Letter along with a Loss Mitigation application and materials asking Plaintiff to consider modification of the Loan, even though the debt for the Loan had been discharged and the Property previously securing it surrendered and foreclosed.

29.    A true and correct copy of this May 15, 2014 letter is attached hereto as Exhibit "D" and incorporated herein by reference.

30.    Further, despite the change in the legal status of the Account upon discharge, Defendant illegally accessed and reviewed Plaintiff's credit reports with Experian after the discharge even though it had no legally permissible basis to take such action.

31.    After the automatic stay had been lifted in the Bankruptcy Case and the Property foreclosed by the first lien holder, on August 9, 2012, Defendant impermissibly accessed and reviewed Plaintiff's credit report with Experian.

32.    After the automatic stay had been lifted and the Property foreclosed by the first lien holder, on October 29, 2012, Defendant impermissibly accessed and reviewed Plaintiff's credit report with Experian.

6

33.   After the automatic stay had been lifted and the Property foreclosed by the first lien holder, on February 1, 2013, Defendant impermissibly accessed and reviewed Plaintiff's credit report with Experian

34.   After the automatic stay had been lifted and the Property foreclosed by the first lien holder, on April 29, 2013 Defendant impermissibly accessed and reviewed Plaintiff's credit report with Experian.

35.   After the automatic stay had been lifted and the Property foreclosed by the first lien holder, on July 23, 2013 Defendant impermissibly accessed and reviewed Plaintiff's credit report with Experian.

36.   After the Account had been discharged and the Property foreclosed by the first lien holder, on October 25, 2013, Defendant impermissibly accessed and reviewed Plaintiff's credit report with Experian.

37.   After the Account had been discharged and the Property foreclosed by the first lien holder, on January 28, 2014, Defendant impermissibly accessed and reviewed Plaintiff's credit report with Experian

38.   After the Account had been discharged and the Property foreclosed by the first lien holder, on April 17, 2014, Defendant impermissibly accessed and reviewed Plaintiff's credit report with Experian.

39.   True and correct copies of relevant portions of Plaintiff's Experian credit report showing Defendant's impermissible account reviews are attached hereto as Exhibit "E."

40.   The purpose for accessing Plaintiff's credit reports which Plaintiff gave to Experian was allegedly to "complete a mortgage application" or "to monitor" its accounts; yet, neither

of these were legitimate purposes and Defendant, in actuality, was trying to collect the subject debt from Plaintiff in violation of the discharge injunction.  If it denies that this was the purpose, then Defendant was trying to gain access to Plaintiff's personal financial information which is protected by law.

41.    Defendant's illegal access to Plaintiff's credit reports has occurred as recently as April 17, 2014, long after the discharge of the debt at issue and the foreclosure of the Property.

42.    The conduct of Defendant has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the jury.

43.    Defendant knew and continues to know that the automatic stay and the discharge of the subject debt means the debt is no longer collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate Plaintiff's right to privacy by impermissibly accessing Plaintiff's credit reports during the pendency of the Bankruptcy Case and after the discharge was granted.

44.    After a reasonable time for discovery, Plaintiff believes he will be able to show that despite receiving dozens, if not hundreds, of disputes complaining that Defendant was illegally accessing credit reports for account holders whose debts with Defendant had been discharged in bankruptcy, Defendant intentionally and knowingly has not corrected its policy of engaging in this action.

45.    After a reasonable time for discovery, Plaintiff believes he will be able to show that all actions taken by employees, agents, servants, or representatives of any type for

Defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

46.     After a reasonable time for discovery, Plaintiff believes he will be able to show that all actions taken by Defendant at issue were performed maliciously, wantonly, recklessly, intentionally or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

47.     After a reasonable time for discovery, Plaintiff believes he will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports and Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

## V.   GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

48.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

49.     The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

(f)   Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

9

(2)   the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681b (f).

50.   Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

(a) In General. – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(3)   To a person which it has reason to believe –

(A)   intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

***

(F)   otherwise has a legitimate business need for the information * * *

(ii)   to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

51.   On at least eight (8) occasions after the Discharge Order was signed and entered in Plaintiff's Bankruptcy Case, Defendant requested and obtained Plaintiff's consumer report from Experian.

52.     On such occasions, Defendant represented to Experian that such requests were made to "complete a mortgage application" or "to monitor" its accounts.

53.     When requesting and obtaining Plaintiff's credit information from Experian, as described herein, Defendant had actual knowledge that it did not have a legally permissible purpose to obtain such information.

54.     Defendant has and had actual knowledge that as of the filing of Plaintiff's Bankruptcy Case and the entry of the Discharge Order, Defendant was legally prohibited from pursuing any collection of the subject debt against Plaintiff or communicating with Plaintiff about the Account and the underlying discharged debt to justify an account review of his credit information.  As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit reports with Experian at all times post-discharge.

55.     At the time Defendant impermissibly accessed Plaintiff's credit reports, Defendant had actual knowledge that Plaintiff had not requested new credit from it nor had he initiated a credit transaction with Defendant at any time since his bankruptcy filing or discharge. As such, Defendant had actual knowledge that it did not have a legally permissible purpose to access Plaintiff's credit information as it did.

56.     Defendant has and had actual knowledge that Plaintiff did not authorize access and reviews of his consumer report by Defendant subsequent to his bankruptcy discharge. Accordingly, Defendant had actual knowledge that it did not have a legally permissible purpose to access Plaintiff's credit information when it engaged in such action post-discharge.

57.     For Defendant to repeatedly request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge that it had no permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

58.     After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant requested and obtained Plaintiff's private personal and financial information from Experian for the illegal purpose of attempting to collect on the underlying discharged debt.

59.     After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant used false pretenses, namely the representation that it intended to use Plaintiff's consumer report for account review or collection purposes, to obtain Plaintiff's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

60.     After a reasonable time to conduct discovery, Plaintiff believes he can prove, additionally and/or in the alternative, Defendant is unwilling or unable to prevent its system from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having his private, personal and financial information disclosed without his consent, authorization or other legal justification.

61.     As a direct and proximate result of Defendant's conduct as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of his privacy, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

62.   Defendant's actions at issue have caused Plaintiff to suffer embarrassment, mental anguish, inconvenience, and other pecuniary and non-pecuniary damages.

63.   Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights.   The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

## VI. GROUNDS FOR RELIEF - COUNT II

## TEXAS FINANCE CODE - UNFAIR DEBT COLLECTION

64.   Plaintiff repeats, re-alleges, and incorporates by reference all paragraph as above as if fully rewritten here.

65.   Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a)   Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from taking an action prohibited by law, since the FCRA prohibits accessing a credit report without a valid legal purpose, and since Defendant's attempts to collect the discharged debt constituted a violation of the bankruptcy discharge injunction currently in place;

b)   Tex. Fin. Code § 392.304(a)(8), which prohibits Defendant from misrepresenting the character, extent, or amount of Plaintiff's debt, or misrepresenting the status of Plaintiff's debt in a judicial or governmental proceeding, since Defendant alleged the justification for accessing Plaintiff's credit reports was an "account review" or "other business transaction," that was a misrepresentation of the status of debt at issue, and by continuing to send letters and correspondence to Plaintiff requesting Plaintiff to

modify the Loan post-discharge, Defendant was misrepresenting that the debt was still collectable when it was not by virtue of the discharge injunction; and

c)   Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, since the debt at issue had been discharged in Plaintiff's bankruptcy case and there were no other transactions between the parties, the only conclusion that can be drawn is Defendant was trying to gather information for an attempt to collect the debt at issue in violation of the discharge injunction by accessing Plaintiff's credit reports post-discharge, and the continued sending of letters and attempts to get the Plaintiff to pay the discharged debt were deceptive means to collect a debt, since the debt had already been discharged and was uncollectible.

66.   Under Tex. Fin. Code Ann. § 392.403, the said violations render Defendant liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees.   Plaintiff's injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

67.   Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting this claim.

## VII. GROUNDS FOR RELIEF - COUNT III

## INVASION OF PRIVACY

68.   Plaintiff restates and reiterates herein all previous paragraphs.

69.   Defendant's conduct, as described herein, when it acquired a copy of Plaintiff's consumer report constituted an invasion of Plaintiff's private affairs.   The invasion was one that

would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included a consumer report.  Such wrongful acts caused injury to Plaintiff which resulted in extreme emotional anguish, loss of time, and damage to his credit.

70.  Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

### VIII. GROUNDS FOR RELIEF - COUNT IV

### VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

71.  Plaintiff repeats, re-alleges, and incorporates herein all previous paragraphs above as if set forth herein in their entirety.

72.  At all times material to this proceeding, Defendant had actual knowledge of Plaintiff's' Bankruptcy Case and the discharge of the debt at issue in said case.

73.  Defendant failed to cease its debt collection activity on the account and debt at issue when it became aware that Plaintiff filed for bankruptcy protection and the debt had been discharged in their Bankruptcy Case, as evidenced by Defendant sending Plaintiff a modification packet after the Property had been foreclosed and the debt discharged and by repeatedly accessing Plaintiff's credit reports from Experian without a lawful purpose.

74.  Defendant's aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a). Defendant's failure to comply with the aforesaid laws, in light of receiving notices from the Bankruptcy Court about the discharge of Plaintiff's debt at issue and the legal effect of the discharge, illustrates its contempt for Federal law and the discharge injunction.

75.     The actions of Defendant in repeatedly accessing Plaintiff's credit reports from Experian and attempting to lure Plaintiff to modify the Loan, after the Property had been foreclosed and the debt discharged, constitute a gross violation of the discharge injunction as set forth in 11 U.S.C. § 362 and 524(a)(1)-(3).

76.     The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the Chapter 13 bankruptcy filed by Plaintiff.   With this prima facie showing, the duty is on Defendant to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability.   Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on his claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiff.   Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.   Any allegation of a good faith exception should not be allowed.

77.     Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

16

78.   No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

79.   The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint.  None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

80.   Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court.  Any attempt to burden Plaintiff with policing the misconduct of Defendant would be a complete derogation of the law.  It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance.  Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant.   No allegation of a mitigation as a defense should be allowed.

81.   Plaintiff has been injured and damaged by Defendant's actions and is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524, and pursuant to the Court's powers under 11 U.S.C. § 105.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Michael Lynn Isbell, prays that the Court will:

A.     Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney fees as provided by the TDCA, the FCRA, for the multiple invasions of privacy and for violations of the discharge injunction.

B.     Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.     Grant such other and further relief, in law or equity, to which Plaintiff might show him justly entitled.

<div style="margin-left:40%">

Respectfully submitted,

_____/s/ James J. Manchee_____
James J. Manchee
Jim@mancheelawfirm.com
State Bar Number 00796988
Marilyn S. Altamira
State Bar Number 00796119
Maltamira@mancheelawfirm.net
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

ATTORNEYS FOR PLAINTIFF

</div>

## JURY DEMAND

Plaintiff hereby demands a trial to a jury on all issues so triable.

____8-11-14_____                          _/s/ *James J. Manchee*_____
Date                                                          James J. Manchee

18